**Jonathan C. Myers (*Admitted Pro Hac Vice*)**
**Eric A. Linden (*Admitted Pro Hac Vice*)**
**Jaffe, Raitt, Heuer & Weiss P.C.**
**27777 Franklin Road, Suite 2500**
**Southfield, MI 48034**
**248.351.3000**
**248.351.3082 (fax)**
**jmyers@jaffelaw.com**
**elinden@jaffelaw.com**

**Attorneys for Plaintiff**
**AMERICAONE PAYMENT SYSTEMS, INC.**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **AMERICAONE PAYMENT SYSTEMS, INC.,** ) | |
| ) | **Hon. Patricia V. Trumbull** |
| **Plaintiff,** ) | **Case No. C08-01818-PVT** |
| vs. ) | |
| ) | |
| **FIRST AMERICAN PAYMENT** ) | |
| **SYSTEMS, L.P.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |

**PLAINTIFF AMERICAONE PAYMENT SYSTEMS, INC.'S MEMORANDUM IN**
**OPPOSITION TO DEFENDANT FIRST AMERICAN PAYMENT SYSTEMS, L.P.'S**
**MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**I.    INTRODUCTION AND ISSUES TO BE DECIDED**

Defendant First American Payment Systems, LP's Motion to Compel Arbitration and

Stay Proceedings ("Motion") seeks to enforce a provision contained in a certain agreement

between the parties providing for non-binding arbitration.  Because not all of the claims asserted

by AmericaOne are arbitral under the Agreement, and because non-binding arbitration is not

mandatory under the Federal Arbitration Act in any event, this Court should not require non-binding arbitration when such exercise will be expensive and wasteful.

Alternatively, if the Court does compel the parties to participate in non-binding arbitration, the Federal Arbitration Act restricts the Court's ability to compel arbitration outside of the Northern District of California.   As a result, Defendant's request for an order compelling arbitration in Phoenix, Arizona is misplaced as this Court is only permitted to compel arbitration at a location within the Northern District of California.

## II.    FACTUAL BACKGROUND[1]

### The Parties

AmericaOne is engaged in the business of marketing and selling credit card processing services to merchants, which allow merchants to accept credit and debit cards for payment of goods and services sold by those merchants. (Complaint, ¶ 7).  First American is also engaged in the business of marketing and selling credit card processing services to merchants and processing and transmitting electronic data of a financial, banking and economic nature, including, but not limited to, credit and debit card transactions. ¶ 8.

### Execution of the ISO Agreement

On or about June 20, 2002, AmericaOne and First American entered into an Independent Sales Organization Agreement, attached as Exhibit A to AmericaOne's Complaint.  ¶ 9.  The Independent Sales Organization Agreement and the attached Exhibit A are collectively referred to as the "ISO Agreement."[2]

---

[1]  The Factual Background relies on the allegations contained in AmericaOne's Complaint. The paragraphs of the Complaint are referred to by number.

[2]  In the ISO Agreement, AmericaOne is referred to as an Independent Sales Organization or "ISO."

The purpose of the ISO Agreement was to "retain ISO on a non-exclusive basis to solicit merchants to utilize First American's electronic capture and transaction processing service." ¶ 11.  Pursuant to the ISO Agreement, AmericaOne agreed to solicit prospective merchants to execute credit and debit card processing agreements (the "Merchant Agreements") with First American.  ¶ 12. First American established the prices it charged the merchants for the credit and debit card processing services provided.  ¶ 12.

### *First American's Payment Obligation To America One*

In accordance with the ISO Agreement, First American agreed to pay AmericaOne for each merchant that executed a Merchant Agreement with First American.  [Ex. A, Section 8.2.2]. For each Merchant Agreement, AmericaOne was entitled to two separate payments based on the monthly residual income generated by that merchant (the "Monthly Portfolio").  [Exhibit A, Section 8.2.2].  In order to calculate the payment obligations under the ISO Agreement, First American would examine the merchant's net revenue for a period of two months after execution of the Merchant Agreement (the "Holding Period").  ¶ 15.

Pursuant to the ISO Agreement, the first payment was calculated by multiplying the merchant's net revenue of the Monthly Portfolio in the last month of the Holding Period by thirty (the "First Payment").  AmericaOne was, at its option, entitled to an interim payment in the first month of the Holding Period.  ¶ 16.

The second payment would be calculated based on the average revenues during the second month of the Holding Period plus the average revenues of the eleven months immediately following the Holding Period (the "Second Payment").  AmericaOne was entitled to the Second Payment within fourteen months after execution of the Merchant Agreement.  ¶ 17.

In April 2004, Defendant arbitrarily, and in violation of the ISO Agreement, changed the method of calculating AmericaOne's payments. Rather than multiplying the net revenue of the Monthly Portfolio in the second month of the Holding Period by thirty, as required by the ISO Agreement, Defendant multiplied the net revenue of the Monthly Portfolio in the second month of the Holding Period by twenty eight. ¶ 19. Despite AmericaOne's objections, Defendant continued to violate the ISO Agreement by refusing to pay AmericaOne as required by the ISO Agreement.[3] ¶ 20.

AmericaOne made numerous requests to receive reports, daily summaries, and monthly accountings relating to its merchants' actual debit card, network fees, and transaction fees billed. ¶ 23. However, First American, in breach of Section 8.25 of the ISO Agreement, refused to provide such information to AmericaOne. *Id.*

### First American's Tortious Interference With AmericaOne's Sales Agents

In September of 2005, First American improperly, and successfully, solicited AmericaOne's sales agents and employees. ¶ 27. Specifically, First American solicited certain sales agents to terminate their business relationship with AmericaOne and enter into a direct contractual relationship with First American. *Id.* This tort claim does not fall within the ambit of the arbitration clause.

### First American's Improper Termination of the ISO Agreement

Pursuant to Section 5 of the ISO Agreement, the ISO Agreement automatically renewed for consecutive one year terms unless terminated by written notice ninety days prior to the

---

[3] AmericaOne was also entitled to payments for all debit card transactions with the payments calculated according to the provisions of the ISO Agreement. In breach of the ISO Agreement, First American refused to make proper payments to AmericaOne for debit card and related transactions and network fees as required by the ISO Agreement. ¶¶ 21-22.

existing term.  In or around November 2006, First American notified AmericaOne that the ISO Agreement would terminate on January 1, 2007 unless AmericaOne agreed to execute a new ISO agreement that would modify First American's payment obligations to AmericaOne.[4]  ¶ 29.  First American knew that AmericaOne paid all of its sales agents up front with the monies to be paid by First American and could not afford to be without an ISO Agreement.  First American knew AmericaOne was at its mercy, but it nonetheless refused to cave in despite the gun to its head.

Over AmericaOne's objections and notice to First American that it did not have a replacement credit card processor, First American terminated the ISO Agreement on January 1, 2007 and refused to accept any new merchants solicited by AmericaOne or its agents. ¶ 32. Despite AmericaOne's diligent efforts, a new processing agreement with a new credit card processing company was not executed and fully implemented until early March, 2007.  As a result, between January 1, 2007 and April, 2007, AmericaOne did not have its products and services sufficiently implemented with its new provider to solicit merchants and train its employees and agents at the scale previously achieved and, as a result, AmericaOne suffered substantial damages, including tortious intereference with its contractual relationships and business expectancies with customers and potential customers.  ¶¶ 33-34.  These damages are, quite clearly, not damages "arising out of" the ISO Agreement, but rather out of its improper termination and First American's tortious conduct.

Now, after years of failing to pay AmericaOne according to the terms of the ISO Agreement, First American brings the instant Motion in a patent attempt to increase the costs of and forestall the instant litigation, by, once again, taking advantage of its superior size and

---

[4]   Pursuant to the ISO Agreement, First American was not permitted to terminate the ISO Agreement until June 19, 2007.

economic resources.  In support of its Motion, First American relies on the provisions of Section

13.18 of the ISO Agreement, which states as follows,

> All disputes, claims, or other matters in question between the parties arising out of this Agreement, other than claims involving injunctive relief, shall be decided by **_non-binding arbitration_** to be conducted at a neutral site, pursuant to the then-current <u>Commercial Arbitration Rules</u> of the American Arbitration Association.

[Ex. A, Section 13.18] (emphasis added).  Notably, the arbitration provision is limited in scope

as it does not encompass all claims and controversies between the parties.  Rather, it only covers

those claims "arising out of this Agreement." *Id.*

 As will be discussed below, Section 13.18 of the ISO Agreement calling for non-binding

arbitration is not an obligation of either party, but rather one of many options an aggrieved party

can pursue.  Moreover, Section 13.18 only encompasses those claims "arising out of [the ISO

Agreement]."  It does not encompass all claims and controversies between the parties.  Since

neither party is bound by the arbitrator's ultimate decision and because not all of AmericaOne's

claims are arbitrable, the FAA does not require this Court to compel the parties to arbitrate.

## III.    <u>ARGUMENT AND AUTHORITIES</u>

### A.    THE FEDERAL ARBITRATION ACT DOES NOT REQUIRE THIS COURT TO COMPEL THE PARTIES TO NON-BINDING ARBITRATION.

Section 2 of the FAA provides that "a written provision in…a contract…to <u>settle</u> by

arbitration a controversy thereafter arising out of such contract…shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract."  9 U.S.C. § 2 (emphasis added).  Section 3 of the FAA provides for the stay of

proceedings in federal district courts when all issues in the proceeding are referable to

arbitration, and Section 4 provides for orders compelling arbitration when one party has failed,

neglected, or refused to comply with an arbitration agreement.  *See* 9 U.S.C. § § 3, 4.

The FAA does not define the term "arbitration."  The courts have struggled to do so, largely in the context of a debate over whether the FAA applies to nonbinding arbitration. The great weight of authority reaches the conclusion that non-binding arbitration is not within the purview of the FAA.  *Compare Wolsey LTD v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998) ("in light of the strong presumption in favor of arbitrability…we hold that arbitration need not be binding in order to fall within the scope of the Federal Arbitration Act.") *with Dluhos v. Strasberg*, 321 F.3d 365, 371 (3d Cir. 2003) (non-binding dispute resolution policy did not constitute "arbitration" under FAA) *and Advanced Bodycare Solutions, LLC v. Thione International, Inc.*, 514 F.Supp. 2d 1326 (S.D. Fla. 2007) *affirmed by* Docket No. 06-81128-CV-DTKTH (11th Cir. April 21, 2008); *see also Harrison v. Nissan Motor Corp.*, 111 F.3d 343 (3rd Cir. 1997)("the essence of arbitration, we think, is that, when the parties submit their disputes to it, they have agreed to arbitrate these disputes through to completion, *i.e.* to an award made by a third-party arbitrator").

Here, Section 13.18 of the ISO Agreement describing the arbitral forum as "non binding arbitration" creates a permissive option to arbitrate, rather than a mandatory one, that falls outside the enforcement field of the Federal Arbitration Act, 9 U.S.C. § § 1-10 (FAA).  By creating an option for the aggrieved party to call for non-binding arbitration, AmericaOne and First American have made resort to arbitration the prerogative—not the obligation—of the aggrieved party.

In *Advanced Bodycare Solutions,* the court was faced with a similar non-binding arbitration provision.  514 F.Supp. 2d at 1332-33.  The Court stated,

> That is, this alternative dispute mechanism merely provides a forum for the parties to pursue pre-suit settlement negotiations:  Within this forum, the arbitral procedure is simply one option that the aggrieved party may or may not invoke, having the alternative option of pursuing mediation.  Because the contract does

not require [plaintiff] to invoke the arbitral aspect of the alternative dispute resolution mechanism, and because an agreement to mediate is generally not susceptible to FAA enforcement, there was no agreement to arbitrate this dispute within the meaning of the FAA and this court lacks authority to stay the case pending arbitration pursuant to 9 U.S.C. § 3.

*Id.* The court in *Advanced Bodycare* further reasoned that non-binding arbitration leaves "little ground for reasonable expectation that the procedures prescribed would lead to final resolution of a dispute by the arbiters before resort to litigation…[b]ecause the agreement does not clearly require the parties to arbitrate the dispute through to final decision by the arbiters, it does not mesh with the concept of "arbitration" within the contemplation of the FAA." *Id.* at 1333.

Here, similar to the arbitration provision at issue in *Advanced Bodycare*, Section 13.18 of the ISO Agreement does not require AmericaOne to wait until the arbitration is complete before seeking recourse to the courts. Moreover, there is no requirement that either party, AmericaOne or First American, pursue arbitration to its completion. In essence, non-binding arbitration would result in nothing more than additional costs and further delay of the instant action, particularly, AmericaOne's right to payments of commissions wrongfully withheld by First American. Of course, given First American's size and financial resources, further delay and extra expense is strategically desirable against its weaker and more impecunious opponent.

First American's reliance on *Wolsey v. Foodmaker* is misplaced.[5] 144 F.3d at 1305. In *Wolsey*, the court affirmed the district court's decision to compel non-binding arbitration

---

[5] The Ninth Circuit's holding in *Wolsey v. Foodmaker* is not applicable in this action as the laws of the State of Texas apply. *See* Section 13.1 of the ISO Agreement.

between the plaintiff and defendant.  In affirming the lower court's decision, the Court reasonedthat the arbitration provision at issue "clearly provides for the submission of claims to a third party" and does not "permit one of the parties to 'seek recourse to the courts' after submitting claims for non-binding arbitration but before the 'process is completed and the arbitrator makes a decision.'"  144 F.3d at 1209.  Here, unlike the arbitration provision in *Wolsey*, AmericaOne or First American are permitted to "seek recourse to the courts after submitting claims for non-binding arbitration" prior to completion of the arbitration process and decision.  Second, all the claims at issue in *Wolsey* were arbitrable.  Here, AmericaOne's claim for tortious interference (Count III) is not within the purview of the arbitration provision.

The holding in *NCR Corporation v. Korala Associates,* LTD, 512 F.3d 807, 817-18 (6th Cir. 2008) is on point.  In *Korala*, the Sixth Circuit held that plaintiff's tortious interference claim was non-arbitrable.  It reasoned that the claim could be brought without referencing the disputed agreement as the arbitration provision was limited to "any controversy or claim arising out of or relating to this contract…."  It concluded that the elements of the plaintiff's tortious interference claim could be brought without any reference to the parties' contract.  *Id*. at 818. *See also Oldroyd v. Elmira Sav. Bank, F.S.B.*, 956 F.Supp. 393 (W.D.N.Y. 1997) (holding arbitration provision covering claims arising out of the parties' agreement was not broad enough to cover those claims not arising out of the agreement); *but see Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir.1996) (Title VII claim was within scope of agreement to arbitrate "any action contesting the validity of this Agreement ... or any other disputes") (emphasis added).

Here, AmericaOne's tortious interference claim (Count III) alleges that First American wrongfully interfered with AmericaOne's contracts with potential and existing customers.  Similar to the plaintiff's claim in *Korala*, AmericaOne's claim for tortious interference is

brought without reference to the ISO Agreement. First American's wrongful interference with AmericaOne's existing and potential customers are actions unrelated to the ISO Agreement.

The fact that the ISO Agreement is to be interpreted under Texas law, and the fact that AmericaOne's complaint contains non-arbitrable claims, militates in favor of this Court following the growing trend of authority holding that non-binding arbitration is not encompassed by the FAA.

**B.    THIS COURT ONLY HAS AUTHORITY TO COMPEL ARBITRATION WITHIN THE NORTHERN DISTRICT OF CALIFORNIA.**

If this Court should decide to compel arbitration, it can only compel it within its own forum. Under Section 4 of the FAA (9 U.S.C. § 4) the District Court can compel arbitration only within its own forum. Section 4 provides in relevant part,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition the United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of the suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement….The Court for arbitration shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. ***The hearing and proceedings, under such agreement [to arbitrate] shall be within the district in which the petition for order directing such arbitration is filed.***

9 U.S.C. § 4 (emphasis added). Thus, while Section 4 grants a district court authority to consider petitions to compel arbitration, it also limits a district court's jurisdiction when it mandates, "[t]he hearing and proceedings under [the Agreement], shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.

In interpreting 9 U.S.C. § 4, most courts have held that they lack authority to compel arbitration in a forum outside of their own district. *Ansari v. Qwest Communications*, 414 F.3d

1214 (10th Cir. 2005).  In *Ansari*, the plaintiff brought a fraud action in federal district court in Colorado.  The parties' contract, however, contained an arbitration clause specifying Washington, D.C. as the venue for arbitration.  In response to Qwest's motion to compel arbitration in Colorado, the district court held that it lacked authority either to compel arbitration in its own district *or to compel jurisdiction outside of its district.  Id.* at 1216 (emphasis added). In affirming the district court's decision, the Tenth Circuit agreed that the district court lacked "power to compel arbitration in any district because the arbitration provision requires that arbitration occur in a forum outside the district."  *Ansari*, 414 F.3d at 1216.

Here, First American seeks to compel the parties to arbitrate in Phoenix, Arizona.  As this Court can only compel arbitration within in its own district, *Ansari*, 414 F.3d at 1216, the Court should dismiss First American's Motion.  It cannot compel the parties to arbitrate in Phoenix.

The holding in *Ansari* applies the approach taken by a majority of courts, that "where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4", and "[a]ny other result renders meaningless the § 4 mandate that arbitration and the order compelling arbitration issue from the same district."  *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) (Section 4 of FAA "prevents federal courts from compelling arbitration outside of their own district")); *Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997) (only district court in chosen forum has jurisdiction to compel arbitration); *Roe v. Gray*, 165 F.Supp.2d 1164, 1173 (D. Colo. 2001) (same); *Econo-Car Int'l Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974)(reversing order compelling arbitration outside chosen district); *Indian Harbor Insurance Co. v. Global Transport System, Inc.*, 197 F.Supp.2d 1 (S.D.N.Y. 2002) (denying defendant's motion to compel arbitration in Puerto Rico and, instead, compelling arbitration in New York).

11

If this Court decides not to dismiss First American's Motion outright, then it can only compel arbitration within its own District. The Ninth Circuit has held that a District Court must compel arbitration in its own district even if the contractual provision designates a different forum. *Textile Unlimited, Inc. v. BMH and Company, Inc.,* 240 F.3d 781 (9th Cir. 2001) ("we conclude that the Federal Arbitration Act does not require venue in the contractually-designated arbitration locale"). In accordance with the holding in *Textile*, First American's Motion must be denied to the extent that it requests this Court to compel arbitration in Phoenix, Arizona rather than within the Northern District of California.

Finally, to the extent this Court nonetheless finds it has power to compel arbitration at the location selected by the parties' contract (here, a "neutral" location), AmericaOne requests this Court to compel the parties to arbitrate in Chicago, Illinois. Unlike Phoenix, Chicago is a more sophisticated legal market, is equally convenient and more readily accessible, and is better equipped to handle the complex nature of the credit card processing industry and ISO agreements, such as those involved in the dispute at issue in this case.

## **CONCLUSION**

Plaintiff AmericaOne respectfully requests this Court deny Defendant First American's Motion to Compel Arbitration as this Court is not required by the FAA to compel the parties to participate in "non-binding arbitration." Alternatively, if the Court does compel the parties to arbitrate, the Court is required by the FAA to designate a forum located within the Northern District of California. At a minimum, Chicago ought to be selected over Phoenix.

Respectfully submitted,

/s/ Eric A. Linden
Jonathan C. Myers (*Admitted Pro Hac Vice*)
Eric A. Linden (*Admitted Pro Hac Vice*)
JAFFE, RAITT, HEUER & WEISS P.C.
Attorneys for Plaintiff AmericaOne
27777 Franklin Road, Suite 2500
Southfield, MI 48034
248.351.3000
jmyers@jaffelaw.com
elinden@jaffelaw.com

Dated: June 10, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2008, I caused the foregoing **Memorandum in Opposition to Defendant First American Payment Systems, L.P.'s Motion to Compel Arbitration and Stay Proceedings** to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record as listed below:

John R. Crews
john.crews@alston.com

Gary E. Gamel
ggamel@aol.com

Eric A. Linden
elinden@jaffelaw.com

/s/ Jonathan C. Myers
Jonathan C. Myers

1555528.01